## IN THE FEDERAL DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD DOMINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. |
| UNITED STATES OF AMERICA, | ) |
| NORTHWESTERN MEMORIAL HEALTHCARE, an | ) |
| Illinois corporation, NORTHWESTERN MEMORIAL | ) |
| HOSPITAL, an Illinois corporation, | ) |
| NORTHWESTERN MEDICAL FACULTY | ) |
| FOUNDATION, an Illinois corporation, | ) |
| NORTHWESTERN UNIVERSITY, Feinberg School | ) |
| of Medicine, LOYOLA UNIVERSITY HEALTH | ) |
| SYSTEM, an Illinois corporation, LOYOLA | ) |
| HOSPITAL, an Illinois corporation, LOYOLA | ) |
| UNIVERSITY, Stritch School of Medicine, | ) |
| ANNA KANE, M.D., ARTI LAKHANI, M.D., | ) |
| BEN SCHWAB, M.D., DANIEL FELDMAN, M.D., | ) |
| DAVID SMITH, M.D., DIANE AW, M.D., | ) |
| JAMES MARTIN, M.D., JAQUELINE BLANK, M.D., | ) |
| JASON CASTATOR, M.D., JEFFERY | ) |
| HOTALING, M.D., JULIA MALALIS, M.D., | ) |
| KRISTIN SCHMIDLIN, M.D., LANEISHA THOMAS, | ) |
| M.D., MARISA McGINLEY, M.D. MICHAEL | ) |
| LOOCHTAN, M.D., MONICA PATADIA, M.D., | ) |
| ROBERT HIRSCHSTICK, M.D., SHISHMIR | ) |
| SHARMA, M.D., and SRINIVAS YALLAPRAGADA, | ) |
| M.D., individually and as duly authorized agents | ) |
| and/or apparent agents of the United States | ) |
| Government, Northwestern and/or Loyola | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT AT LAW**

NOW COMES the Plaintiff, RONALD DOMINO, through his attorneys, LEVIN

RIBACK LAW GROUP, P.C. complaining of the Defendants THE UNITED STATES OF

AMERICA, NORTHWESTERN MEMORIAL HEALTHCARE, an Illinois corporation,

NORTHWESTERN MEMORIAL HOSPITAL, an Illinois corporation, NORTHWESTERN MEDICAL FACULTY FOUNDATION, an Illinois Corporation, NORTHWESTERN UNIVERSITY Feinberg School of Medicine, LOYOLA UNIVERSITY HEALTH SYSTEM, an Illinois corporation, LOYOLA HOSPITAL, an Illinois corporation, LOYOLA UNIVERSITY Stritch School of Medicine, ANNA KANE, M.D., ARTI LAKHANI, M.D., BEN SCHWAB, M.D., DANIEL FELDMAN, M.D., DAVID SMITH, M.D., DIANE AW, M.D., JAMES MARTIN, M.D., JAQUELINE BLANK, M.D., JASON CASTATOR, M.D., JEFFERY HOTALING, M.D., JULIA MALALIS, M.D., KRISTIN SCHMIDLIN, M.D., LANEISHA THOMAS, M.D., MARISA McGINLEY, M.D., MICHAEL LOOCHTAN, M.D., MONICA PATADIA, M.D., ROBERT HIRSCHSTICK, M.D., SHISHMIR SHARMA, M.D., and SRINIVAS YALLAPRAGADA, M.D., individually and as duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola and states as follows:

## Introduction

From March 4, 2013 to April 3, 2013, Plaintiff, Ronald Domino, was seen by various physicians, on various dates, at the Jesse Brown VA Hospital (hereinafter "Jesse Brown VA") and Edward Hines Jr. VA Hospital (hereinafter "Hines VA"). In order to make each physicians' liability clear, we have segregated the physicians' acts of negligence, that are at issue in this case, into different counts based on the dates they treated Ronald Domino at the Jesse Brown VA and Hines VA.

On February 22, 2013, a surgical team at Hines VA performed surgery on Ronald Domino. The procedure performed was called a correction of obstructive

2

blepharochalasis, pseudoherniation orbital fat, brow-ptosis (raising his eyelids). During the surgery, the doctors discovered that there was significant bleeding. After the surgery, it was determined that Ronald Domino suffered from aliment known as idiopathic thrombocytopenia purpura ("ITP"). This ailment resulted in Ronald Domino's platelet count dropping to approximately 3,000. In order to remedy this, his treating physicians placed him on prednisone. This medication masks infection and has anti-inflammatory effects that suppress temperature and elevate the white blood cell count in patients. As a result of this condition, Ronald Domino was admitted to Hines VA and remained there from February 22, 2013 until March 5, 2013. After being discharged, Ronald Domino went back to Hines emergency room the following day, on March 6, 2013, with severe pain in his back and shoulder. In total, he returned to Hines VA on four different occasions, March 6, March 7, March 9, and March 18, 2013, complaining of the same pain but the proper diagnosis was not made. On March 18, 2013, after going to Hines emergency room, Ronald Domino was transferred to the Jesse Brown VA for further treatment. He was admitted to and treated at Jesse Brown VA by various physicians from March 18, 2013 until April 3, 2012.  On April 3, 2013, Ronald Domino was properly diagnosed with osteomyelitis of his spine, discitis at multiple levels, and a septic hip. As a result of the delayed diagnosis, Ronald Domino underwent four surgical procedures on April 4, 2013, April 5, 2013, April 9, 2013, and August 3, 2013, including lumbar laminectomies, evacuations of epidural abscesses, IR aspiration, open irrigation, and debridement of his hip. He will suffer from severe and permanent injuries for the rest of his life.

3

## Jurisdictional Facts

1.      Plaintiff, Ronald Domino is a 73 year old veteran and at all times relevant to this Complaint was and is a resident and domiciled in the of the City of Lemont, Illinois. Ronald Domino lives within the jurisdiction of the Northern District of Illinois.

2.      The Defendant, the United States of America, operated hospitals under the Veterans Administration Act. As part of this operation, the United States of America operated the Hines Veterans Administration Hospital in Maywood, Illinois and the Jesse Brown Veterans Administrative Hospital in Chicago, Illinois.  Both hospitals are in the jurisdiction of the Northern District of Illinois.

3.      Ronald Domino was a member of the military police in the United States Armed forces and served in this capacity from 1962-1964 in Georgia and South Carolina. Ronald Domino was honorably discharged from his duties as a member of the military police in 1964. As part of his benefits of being a retired veteran, he is permitted to receive medical care from the Veterans Hospitals.

4.      On August 12, 2014, the Plaintiff, Ronald Domino, through his attorneys served a notice under the Federal Tort Claims Act of his intent to file an action for medical negligence committed at the Hines VA and the Jesse Brown VA. (See attached Exhibit A) Accompanying this letter were all of Ronald Domino's medical records from the Veterans Administration that were in possession of his attorneys.

5.      On September 4, 2014, the United States of America, through its regional counsel, D. Brent Pope acknowledged receipt of this letter and notice under the Federal Tort Claims Act. (See attached Exhibit B)

6.     On March 3, 2015, six months after receiving the notice and after investigating this incident, the United States Government, sent a letter indicating that it is denying the claim for medical negligence and informed Ronald Domino of his right to bring suit against the United States Government in Federal Court within six months. This letter was sent by D. Brent Pope, regional counsel for the United States Government.  (See attached Exhibit C)

7.     The Plaintiff, Ronald Domino, brings this lawsuit against the United States of America for medical negligence committed by its doctors, residents, interns, nurses and other personnel located at the Hines VA and the Jesse Brown VA pursuant to the Federal Tort Claims Act section 1346(b) and 2671-2680, title 28, of the United States Code.

8.     At all times relevant to this Complaint, Defendants Northwestern Memorial Hospital, a corporation, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, and Northwestern University Fienberg School of Medicine, a not-for-profit corporation, provided medical services and ran a medical school located in the City of Chicago, County of Cook and State of Illinois and are accredited to teach the profession of medicine and practice medicine in the State of Illinois.

9.     At all times relevant to this Complaint, Defendant Northwestern University Feinberg School of Medicine engaged in training and/or overseeing medical care provided by its employees, agents, physicians and/or physician groups to Northwestern

5

hospitals, including the Jesse Brown VA and Hines VA, and held itself out as being trained and skilled in the medical profession.

10.    At all times relevant to this Complaint, Defendant Northwestern University Feinberg School of Medicine employed various interns, resident physicians, and physicians and through an agreement with the Jesse Brown VA these interns, resident physicians, and physicians provided medical services at the Jesse Brown VA.

11.    At all times relevant to this Complaint, Defendant Northwestern Medical Faculty Foundation provided medical care through its specialty physicians working at various Defendant Northwestern Memorial Healthcare hospitals in the State of Illinois, including the Jesse Brown VA and Hines VA.

12.    At all times relevant to this Complaint, Defendant Northwestern Memorial Healthcare was the corporate parent of Defendant Northwestern Hospital who provided medical care through its specialty physicians working at various Defendant Northwestern Memorial Healthcare hospitals in the State of Illinois, including the Jesse Brown VA and Hines VA.

13.    At all times relevant to this Complaint, Defendants Loyola Hospital and Loyola University Stricth School of Medicine is a medical school located in the City of Chicago, County of Cook and State of Illinois and accredited to teach the profession of medicine in the State of Illinois.

14.    At all times relevant to this Complaint, Defendant Loyola employed various interns, resident physicians, and physicians and through an agreement with the Jesse

6

Brown VA these interns, resident physicians, and physicians provided medical services at the Jesse Brown VA.

15.    At all times relevant to this Complaint, Defendant Loyola employed various interns, resident physicians, and physicians and through an agreement with the Hines VA. These interns, resident physicians, and physicians provided medical services at the Hines VA.

16.    At all times relevant to this Complaint, Defendants Loyola University Health Systems and Loyola Hospital provided medical care through its specialty physicians working at various Defendant Northwestern Memorial Healthcare hospitals in the State of Illinois, including the Jesse Brown VA and Hines VA.

17.    On February 22, 2013, Ronald Domino, the Plaintiff, had a surgical procedure performed on him known as a bilateral upper and lower blepharoplasty on his eyes at the Hines VA in Maywood, Illinois. The surgery was performed by the actual or apparent agent of the United States Government, Northwestern and/or Loyola, Monica Patadia, M.D.  During this surgical procedure, Ronald Domino's eyes began to bleed profusely. As a result of this profuse bleeding, the Plaintiff Ronald Domino was admitted to the Hines VA for follow-up, monitoring, treatment and a determination as to the cause of the bleeding. He remained there from February 22, 2013 until March 5, 2013.

18.    During this admission, it was determined that the Plaintiff suffered from idiopathic thrombocytopenia purpura, commonly known at ITP.  Thereafter, in an attempt to treat the ITP, Ronald Domino was placed on prednisone. He was monitored for the ITP and steroid intake by Arti Lakhani, M.D., who was acting in his capacity as the actual or

apparent agent of the United States Government, Northwestern, and/or Loyola. Prior to this admission, Ronald Domino had never seen Arti Lakhani, M.D. for any purpose. Arti Lakhani, M.D. was provided to Ronald Domino for medical treatment as a result of being admitted into the hospital on February 22, 2013.

19.     Attached are the reports of the reviewing health professionals', attached as Exhibits D and E. This physicians have reviewed the medical records from the Hines VA and the Jesse Brown VA and has determined based on education, training and experience that there is reasonable and meritorious basis to bring this lawsuit.

20.     Attached is the affidavit of Richard Levin, the attorney for the Plaintiff, attached as Exhibit F, indicating that he has had this matter reviewed by physicians who practice medicine and are knowledgeable in the issues involved in this case.

<u>Count I</u>
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., and Laneisha Thomas, M.D., each individually and as duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola from March 4, 2013 to March 5, 2013.**

21.     On March 4, 2013, Ronald Domino was being cared for in-patient at the Hines VA for his ITP.

22.     On March 4, 2013, Ronald Domino was being cared for by David Smith M.D., Laneisha Thomas, M.D., and various nurses at the Hines VA.

8

23.     David Smith, M.D. was the actual and/or apparent agent of the United States Government.

24.     David Smith, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

25.     David Smith, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

26.     Laneisha Thomas, M.D. was the actual and/or apparent agent of the United States Government.

27.     Laneisha Thomas, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

9

28. Laneisha Thomas, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

29. On or about March 4, 2013, Ronald Domino began complaining of severe left shoulder and back pain. Ronald Domino was examined by Laneishia Thomas, M.D., who noted that his white blood cell count was elevated.

30. On or about March 4, 2013, Ronald Domino began complaining of severe left shoulder and back pain. Ronald Domino was examined by David Smith, M.D., who noted that his white blood cell count was elevated.

31. On March 4 and March 5, 2013, Ronald Domino was being cared for by Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., and various nurses at the Hines VA. On these dates, Ronald Domino was complaining of severe back pain and shoulder pain and his white blood cell count was continuing to rise.

32. Jeffrey Hotaling, M.D. was the actual and/or apparent agent of the United States Government.

33. Jeffrey Hotaling, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of

10

Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

34. Jeffrey Hotaling, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

35. Jacqueline Blank, M.D. was the actual and/or apparent agent of the United States Government.

36. Jacqueline Blank, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

37. Jacqueline Blank, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

38.    Julia Malalis, M.D. was the actual and/or apparent agent of the United States Government.

39.    Julia Malalis, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

40.    Julia Malalis, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

41.    Michael Loochtan, M.D. was the actual and/or apparent agent of the United States Government.

42.    Michael Loochtan, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

12

43. Michael Loochtan, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

44. Monica Patadia, M.D. performed the surgery on Ronald Domino and continued to care for him from the time after his surgery on February 22, 2103 through April 2, 2013. Monica Patadia, M.D. was the actual and/or apparent agent of the United States Government.

45. Monica Patadia, M.D. was the actual and/or apparent agent of the United States Government.

46. Monica Patadia, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

47. Monica Patadia, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

13

48.     From March 4, 2013 to March 5, 2013, Ronald Domino, when being seen by Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., and Laneisha Thomas, M.D., made continuing complaints of back pain and shoulder pain and had an elevated white blood cell count. Despite these problems from Ronald Domino, these physicians discharged Ronald Domino from the Hines VA on March 5, 2015.

49.     From March 4, 2013 to March 5, 2013 the aforementioned doctors and staff, including nurses and orderlies, at the Hines VA failed to recognize that Ronald Domino's symptoms of back and shoulder pain and elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral to an orthopedic surgeon, neurosurgeon, and/or an infectious disease physician.

50.     On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

51.     At all times relevant to this Complaint, Defendants, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., Laneisha Thomas, M.D., and the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

52.    At all times relevant to this Complaint, Defendants, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., Laneisha Thomas, M.D., Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

53.    At all times relevant to this Complaint, Defendants, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., Laneisha Thomas, M.D., Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

54.    When the Plaintiff, Ronald Domino, was seen at the Hines VA, by Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., Laneisha Thomas, M.D., each of these physicians were the actual and/or apparent agents of the United States of America,

Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine. The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, and physicians, and each of the aforementioned physicians were negligent in one or more of the following ways:

    a. Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

    b. Improperly attributed his back and shoulder pain as musculoskeletal pain;

    c. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

    d. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

    e. Failed to ensure that a CT scan of the spine was performed when a CT was ordered;

    f. The orderlies, clerks, and staff at Hines VA, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

    g. Although the physicians were aware of Ronald Domino's back pain and elevated white blood cell count, failed to properly evaluate or assess

Ronald Domino and improperly discharged him with an ongoing infectious process;

h. Failed to refer Ronald Domino to an infectious disease physician for consultation;

i. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

j. Failed to diagnose osteomyelitis of the spine;

k. Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

l. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

m. Failed to diagnose an epidural abscess in the Ronald Domino's spine;

n. Failed to diagnose discitis;

o. Improperly relied on simple x-rays of the spine, which would not reveal an epidural abscess or discitis.

p. Improperly discharged Ronald Domino from the hospital with an undiagnosed infectious process.

55.    From March 4, 2013 to March 5, 2013, Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia, M.D., David Smith, M.D., and Laneisha Thomas, M.D., each individually and as duly authorized agent and/or

17

apparent agents of the United States Government, Northwestern and/or Loyola, caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of serious injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and suffering, and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

56.     Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013. Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition. He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment. As a result, he did not know and could not have known that any medical negligence had been committed on him until December of 2013.

WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jeffrey Hotaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Michael Loochtan, M.D., Monica Patadia,

18

M.D., David Smith, M.D., and Laneisha Thomas, M.D., each individually and as duly authorized agents and/or apparent agents of the United States Government, Northwestern and Loyola in the amount of $15,000,000.00.

## Count II
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jason Castator, M.D., and Arti Lakhani, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola from March 6, 2013 to March 7, 2013.**

57.      On March 6, 2013 late in the evening, Ronald Domino returned to the Hines VA emergency department complaining of back and flank pain.

58.      On March 6, 2013 and the early morning of March 7, 2013, Ronald Domino was seen in the emergency department of the Hines VA by Jason Castator, M.D. and various nurses and nurse practitioners with complaints of severe flank and back pain. Jason Castator, M.D. diagnosed Ronald Domino's condition as constipation and discharged him home.

59.      On March 6, 2013 and March 7, 2013 Jason Castator, M.D. was a physician practicing emergency medicine and was the actual and/or apparent agent of the United States Government.

60.      Jason Castator, M.D. was the actual and/or apparent agent of the United States Government.

19

61.  Jason Castator, M.D. was a physician practicing emergency medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

62.  Jason Castator, M.D., was a physician practicing emergency medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

63.  On March 6, 2013, Ronald Domino saw Arti Lakhani, M.D.

64.  Arti Lakhani, M.D. was the actual and/or apparent agent of the United States Government.

65.  Arti Lakhani, M.D. was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

20

66.     Arti Lakhani, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

67.     On March 6, 2013 through March 7, 2013, Ronald Domino, when being seen by Jason Castator, M.D., and Arti Lakhani, M.D., made continuing complaints of back pain and shoulder pain and had an elevated white blood cell count. Despite these problems for Ronald Domino, these physicians discharged Ronald Domino from the Hines VA.

68.     On March 6, 2013 and March 7, 2013, Jason Castator, M.D., Arti Lakhani, M.D., and staff at the Hines VA, including nurses and orderlies, failed to recognize that Ronald Domino's symptoms of back and shoulder pain and an elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral to an infectious disease physician and/or orthopedic surgeon and/or neurosurgeon.

69.     On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

70.     At all times relevant to this Complaint, Defendants, Jason Castator, M.D., Arti Lakhani, M.D., and the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise

the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

71.    At all times relevant to this Complaint, Defendants, Jason Castator, M.D., Arti Lakhani, M.D., and Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

72.    At all times relevant to this Complaint, Defendants, Jason Castator, M.D., Arti Lakhani, M.D., Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

73.    When the Plaintiff, Ronald Domino, was seen at the Hines VA, by physicians Jason Castator, M.D., and Arti Lakhani, M.D. These physicians were the actual and/or apparent agent of the United States of America, Northwestern Memorial

22

Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine. The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, physicians, Jason Castator, M.D., and Arti Lakhani, M.D., were negligent in one or more of the following ways:

    a. Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

    b. Improperly attributed his back and shoulder pain as musculoskeletal pain and/or constipation;

    c. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

    d. The orderlies, clerks, and staff at Hines VA, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

    e. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids.

    f. Failed to refer Ronald Domino to an infectious disease physician for consultation;

    g. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

23

h. Failed to ensure that a CT scan of the spine was performed when a CT was ordered;

i. Improperly discharged Ronald Domino without taking a CT of the spine;

j. Failed to diagnose osteomyelitis of the spine;

k. Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

l. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

m. Failed to diagnose an epidural abscess in the Ronald Domino's spine;

n. Failed to diagnose discitis;

o. Improperly relied on simple x-rays of the spine, which would not reveal an epidural abscess or discitis;

p. Improperly discharged Ronald Domino from the hospital with an undiagnosed infectious process.

74.    From March 6, 2013 to March 7, 2013, the Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jason Castator, M.D., and Arti Lakhani, M.D. individually and as a duly authorized agents and/or apparent agents, of the United States, Northwestern and/or Loyola caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and

24

suffering, and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

75.     Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013.  Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition.  He had no reason to think, suspect or know that a mistake and/or misdiagnoses had been made in his care and treatment.  As a result, he did not know and could not have known that any medical negligence had been committed on him until December of 2013.

WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Jason Castator, M.D., and Arti Lakhani, M.D.,  individually and as a duly authorized agents and/or apparent agents of the United States Government, Loyola and Northwestern from March 6, 2013 to March 7, 2013, in the amount of $15,000,000.00.

<u>Count III</u>
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Monica Patadia, M.D., and James Martin, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola on March 8, 2013.**

76.    On March 8, 2013, Ronald Domino returned to the Hines VA for an examination with Monica Patadia, M.D. and James Martin, M.D.

77.    James Martin, M.D., was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

78.    James Martin, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

79.    James Martin, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

80.    On March 8, 2013 the aforementioned doctors and staff at the Hines VA, including nurses and orderlies, failed to recognize that Ronald Domino's symptoms of

26

back and shoulder pain and an elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral an infectious disease physician, an orthopedic surgeon and/or neurosurgeon.

81.     On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

82.     At all times relevant to this Complaint, Defendants, Monica Patadia, M.D., and James Martin, M.D., the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

83.     At all times relevant to this Complaint, Defendants, Monica Patadia, M.D., and James Martin, M.D., Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

27

84.    At all times relevant to this Complaint, Defendants, Monica Patadia, M.D., and James Martin, M.D., Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

85.    When the Plaintiff, Ronald Domino, was seen at the Hines VA, by physicians Monica Patadia, M.D., and James Martin, M.D., each of these physicians were the actual and/or apparent agents of the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine.  The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, physicians, and the aforementioned physicians were negligent in one or more of the following ways:

28

a.  Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

b.  Improperly attributed his back and shoulder pain as musculoskeletal pain;

c.  Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

d.  Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

e.  The orderlies, clerks, and staff at Hines VA, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

f.  Failed to refer Ronald Domino to an infectious disease physician for consultation;

g.  Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

h.  Improperly discharged Ronald Domino without taking a CT of the spine;

i.  Failed to diagnose osteomyelitis of the spine;

j.  Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

k.  Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

l.  Failed to diagnose an epidural abscess in Ronald Domino's spine;

m. Failed to diagnose discitis;

n.  Improperly relied on simple x-rays of the spine, which would not reveal an epidural abscess or discitis.

o.  Improperly told him that his complaints were musculoskeletal and failed to warn him that he may have a serious infectious process;

p.  Improperly discharged Ronald Domino from the hospital with an undiagnosed infectious process.

86.     On March 8, 2013, Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Monica Patadia, M.D., and James Martin, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Loyola, and Northwestern on March 8, 2013, caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and suffering, and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

87.     Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013.  Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition.  He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment.  As a result, he did not know and could not have known that any medical negligence had been committed on him until December of    WHEREFORE, Plaintiff, Ronald Domino, demands judgment against

Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Monica Patadia, M.D., and James Martin, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola in the amount of $15,000,000.00.

## Count IV
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, and Srinivas Yallapragada, M.D., individually and as a duly authorized agent and/or apparent agent of the United States Government, Northwestern, and/or Loyola on March 9, 2013.**

88.     On March 9, 2013, Ronald Domino returned to Hines VA's emergency room with complaints of severe back pain, he was examined, and then discharged.

89.     On March 9, 2013 Ronald Domino was seen in the emergency department of the Hines VA by Srinivas Yallapragada, M.D. and various nurses and nurse practitioners for complaints of severe flank and back pain. Srinivas Yallapragada, M.D. diagnosed Ronald Domino's condition as back pain arthritis and discharged him home.

90.     Srinivas Yallapragada, M.D. was a physician practicing emergency medicine and was the actual and/or apparent agent of the United States Government.

91.    Srinivas Yallapragada, M.D. was a physician practicing emergency medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

92.    Srinivas Yallapragada, M.D., was a physician practicing emergency medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

93.    On March 9, 2013 the aforementioned doctors and staff at the Hines VA, including nurses and orderlies, failed to recognize that Ronald Domino's symptoms of back and shoulder pain and an elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral an infectious disease physician, an orthopedic surgeon and/or neurosurgeon.

94.    On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

95.    At all times relevant to this Complaint, Defendants, Srinivas Yallapragada, M.D., and the United States Government, through its physicians, nurses, orderlies,

32

technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

96.     At all times relevant to this Complaint, Defendants, Srinivas Yallapragada, M.D., and Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

97.     At all times relevant to this Complaint, Defendants, Srinivas Yallapragada, M.D., and Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

98.     When the Plaintiff, Ronald Domino, was seen at the Hines VA, by Srinivas Yallapragada, M.D., who was the actual agent and/or apparent agent of the United States

33

of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine. The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, physicians, and the aforementioned physicians were negligent in one or more of the following ways:

a. Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

b. Improperly attributed his back and shoulder pain as musculoskeletal pain and/or constipation;

c. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

d. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

e. The orderlies, clerks, and staff at Hines VA, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

f. Shrinvas Yallapragada, M.D., failed to order further imaging tests to examine Domino's back and only limited his investigation to x-ray films;

g. Failed to refer Ronald Domino to an infectious disease physician for consultation;

h. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

i. Improperly discharged Ronald Domino without taking a CT of the spine;

j. Failed to diagnose osteomyelitis of the spine;

k. Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

l. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

m. Failed to diagnose an epidural abscess in Ronald Domino's spine;

n. Failed to diagnose discitis;

o. Improperly relied on simple x-rays of the spine, which would not reveal an epidural abscess or discitis.

p. Improperly told him that his complaints were musculoskeletal and failed to warn him that he may have a serious infectious process;

q. Improperly discharged Ronald Domino from the hospital with an undiagnosed infectious process.

99. On March 9, 2013, Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, and Srinivas Yallapragada, M.D., individually and as a duly authorized agent and/or apparent agent of the United States Government, Northwestern and/or Loyola on March 9, 2013 caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a

35

septic hip requiring multiple surgeries and resulting in a plethora of injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and suffering, and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

100.    Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013.  Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition.  He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment.  As a result, he did not know and could not have known that any medical negligence had been committed on him until December of    WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, and Srinivas Yallapragada, M.D., individually and as a duly authorized agent and/or apparent agent of the United States Government, Northwestern and/or Loyola, in the amount of $15,000,000.00.

<u>Count V</u>

**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Diane Aw, M.D., and Marisa McGinely, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola on March 18, 2013.**

101.   On March 18, 2013, Ronald Domino went back to the Hines VA emergency room complaining of severe pain all over his body and the inability to move. Ronald Domino told the doctors at the Hines VA that he was in so much pain it affected his sleep, appetite, and relationships.

102.   On March 18, 2013, Ronald Domino was seen in the emergency department of the Hines VA by Diane Aw, M.D. and various nurses and nurse practitioners. Diane Aw, M.D. ordered a Computer Tomography (CT scan) examination of the spine and abdomen.

103.   On March 18, 2013, Ronald Domino had a CT scan performed of his abdomen. Despite Diane Aw's, M.D. orders, a CT scan of the spine was not performed.

104.   Diane Aw, M.D. was a physician practicing medicine in the emergency department at the Hines VA and was the actual and/or apparent agent of the United States Government.

105.   Diane Aw, M.D. was a physician practicing medicine in the emergency department at the Hines VA and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine

37

and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

106.   Diane Aw, M.D., was a physician practicing medicine in the emergency department at the Hines VA and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

107.   On March 18, 2013, Ronald Domino was admitted to the Hines VA and came under the care of Marisa McGinley, M.D.

108.   On March 18, 2013, Ronald Domino was cared for at the Hines VA by Marisa McGinely, M.D. and various nurses and nurse practitioners for complaints of severe back pain, shoulder pain, chills, and other conditions related to an infectious process.  At the time of being seen by Marisa McGinely, M.D. Ronald Domino's white blood count remained markedly elevated.

109.   Marisa McGinely, M.D., was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

110.   Marisa McGinely, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital,

38

Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

111.   Marisa McGinley, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

112.   While at the Hines VA, Ronald Domino was under the care and treatment of orderlies, nurses and technicians on his floor, in the emergency room and in the radiology department. On March 18, 2013, a CT scan was ordered on his spine pursuant to a physician's order. This CT of the spine was not conducted.

113.   On March 18, 2013, blood tests were conducted and the tests indicated that his white blood cell count was elevated at 20.75. Doctors ordered a CT of Ronald Domino's abdomen and thoracic/lumbar spine; however, only a CT of his abdomen was conducted.

114.   On March 18, 2013, after these tests, Ronald Domino's doctors incorrectly concluded, based on all of his symptoms, that he was having gallbladder issues. Ronald Domino was also examined for his worsening back pain, new onset jaundice and weakness. Ronald Domino's doctors noted leukocytosis, but they incorrectly determined the cause to be the steroids he was receiving and failed to investigate a possible infectious cause for his infection.

115.    On March 18, 2013 the aforementioned doctors and staff at the Hines VA, including nurses and orderlies, failed to recognize that Ronald Domino's symptoms of back and shoulder pain and an elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral to an infectious disease specialist, orthopedic surgeon and/or neurosurgeon.

116.    On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

117.    At all times relevant to this Complaint, Defendants, Diane Aw, M.D., Marisa McGinely, M.D., and the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

118.    At all times relevant to this Complaint, Defendants, Diane Aw, M.D., Marisa McGinely, M.D., Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and

40

diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

119.    At all times relevant to this Complaint, Defendants, Diane Aw, M.D., Marisa McGinely, M.D., Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

120.    When the Plaintiff, Ronald Domino, was seen at the Hines VA, by physicians Diane Aw, M.D., and Marisa McGinely, M.D., on March 18, 2013, each of these physicians were the actual and/or apparent agents of the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine.    The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or

41

servants, including its interns, resident physicians, physicians, and aforementioned physicians were negligent in one or more of the following ways:

a. Failed to consider osteomyelitis and/or an infectious process when Ronald Domino had an elevated white blood cell count;

b. Improperly attributed his back and shoulder pain as musculoskeletal pain and/or constipation;

c. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

d. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

e. Failed to take a CT scan despite the physicians orders to perform a CT scan of the spine;

f. The orderlies, clerks, and staff at Hines VA, failed to take a CT scan despite the physicians orders to perform a CT scan of the spine;

g. Failed to ensure that a CT of the spine was taken;

h. Improperly decided a CT of the spine was not needed when Ronald Domino was diagnosed with gallstones;

i. On March 18, 2013, Ronald Domino's evaluating doctors incorrectly and improperly diagnosed Ronald Domino with gallbladder issues;

j. On March 18, 2013, Ronald Domino's evaluating doctors incorrectly and improperly determined that the steroids he was receiving were the reasons for his worsening back pain, new onset jaundice, weakness and leukocytosis, and failed to investigate further.

k. Failed to refer Ronald Domino to an infectious disease physician for consultation;

l. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

m. Failed to diagnose osteomyelitis of the spine;

n. Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

o. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

p. Failed to diagnose an epidural abscess in the Ronald Domino's spine;

q. Failed to diagnose discitis.

121. On March 18, 2013, Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Diane Aw, M.D., and Marisa McGinely, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern and/or Loyola on March 18, 2013 caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and suffering and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

122. Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013. Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no

43

physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition. He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment. As a result, he did not know and could not have known that any medical negligence had been committed on him until December of 2013.

WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Diane Aw, M.D., and Marisa McGinely, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern and/or Loyola in the amount of $15,000,000.00.

### Count VI
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Shishmir Sharma, M.D., Ben Schwab, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., and Robert Hirschstick, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola from March 19, 2013 to April 2, 3013.**

44

123. On March 19, 2013, Ronald Domino was transferred from Hines VA to the Jesse Brown VA. At the Jesse Brown VA, Shishmir Sharma, M.D. and Ben Schwab, M.D., cared for Ronald Domino.

124. Shishmir Sharma, M.D. examined, evaluated, and prescribed care for Ronald Domino throughout his stay at the Jesse Brown VA from March 19, 2013 until April 2, 2013 when he was transferred back to the Hines VA. During his entire care and treatment by Shishmir Sharma, M.D. Ronald Domino had an elevated white blood cell count indicating he had infectious process.

125. Shishmir Sharma, M.D. was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

126. Shishmir Sharma, M.D. was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

127. Shishmir Sharma, M.D., was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

45

128.   On March 19, 2013 and March 28, 2013 and other days during his stay at the Jesse Brown VA, Ronald Domino was examined, evaluated and cared for by Daniel Feldman, M.D. at the Jesse Brown VA.  Daniel Feldman, M.D. evaluated Ronald Domino for problems related to his ITP and his severe complaints of back and shoulder pain.  At all times while under the care of Daniel Feldman, M.D. Ronald Domino's white blood count remained markedly elevated indicating he had an infectious process.  Daniel Feldman, M.D. did not consider an infectious process in his differential diagnosis of Ronald Domino.

129.   Daniel Feldman, M.D. was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

130.   Daniel Feldman, M.D. was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

131.   Daniel Feldman, M.D., was a physician practicing medicine and provided to the Jess Brown VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

46

132.   Ben Schwab, M.D., was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

133.   Ben Schwab, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

134.   Ben Schwab, M.D., was a physician practicing medicine and provided to the Hines VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

135.   On March 19, March 20, 2013 and other dates during his stay Jesse Brown, VA, Ronald Domino was examined by Anna Kane, M.D. for problems related to his gallbladder, generalized pain, ITP and other issues. While being evaluated and examined by Anna Kane, M.D. Ronald Domino's white blood cell count remained markedly elevated indicating he was suffering from an infectious process. On March 19, 2013, Ronald Domino's abdomen showed that he had gallstones. Thereafter, a liver enzyme test was conducted.

136.   Anna Kane, M.D. was a physician practicing medicine the actual and/or apparent agent of the United States Government.

137.   Anna Kane, M.D. was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

138.   Anna Kane, M.D., was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

139.   On March 22, 2013, April 1, 2013 and April 2, 2013 and other dates during his stay at the Jesse Brown, VA, Ronald Domino was examined by Kristin Schmidlin, M.D. for problems related to his gallbladder, back pain, generalized pain, ITP and other issues. While being evaluated and examined by Kristin Schmidlin, M.D. Ronald Domino's white blood cell count remained markedly elevated indicating he was suffering from an infectious process.

140.   Kristin Schmidlin, M.D. was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

141.   Kristin Schmidlin, M.D. was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Northwestern Memorial Healthcare,

Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

142. Kristin Schmidlin, M.D., was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

143. On April 1, 2013 and other dates during his stay Jess Brown, VA, Ronald Domino was examined by Robert Hirschstick, M.D. for problems related to his gallbladder, back pain, shoulder pain, leg pain, generalized pain, ITP and other issues. While being evaluated and examined by Robert Hirschstick, M.D. Ronald Domino's white blood cell count remained markedly elevated indicating he was suffering from an infectious process. While under the care of Robert Hirschstick, M.D. Ronald Domino had a sedimentation test performed. Ronald Domino's sedimentation rate was markedly elevated indicating he had a serious infectious process.

144. Robert Hirschstick, M.D. was a physician practicing medicine and was the actual and/or apparent agent of the United States Government.

145. Robert Hirschstick, M.D. was a physician practicing medicine and provided to the Jesse Brown VA based on a contract with Northwestern Memorial Healthcare,

Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine and was the actual and/or apparent agent of Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation and Northwestern University Feinberg School of Medicine.

146.    Robert Hirschstick, M.D., was a physician practicing medicine and provided to the Jess Brown VA based on a contract with Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine and was the actual and/or apparent agent of Loyola University Health Systems, Loyola Hospital, and Loyola University Stricht School of Medicine.

147.    On March 29, 2013, one of Ronald Domino's doctors checked his erythrocyte sedimentation rate and noticed it was markedly elevated and then incorrectly diagnosed him with polymyalgeal rhematica.

148.    From March 19, 2013 through April 2, 2013 the aforementioned doctors, including nurses and orderlies, and staff at both the Hines VA and the Jesse Brown VA failed to recognize that Ronald Domino's symptoms of back and shoulder pain and an elevated white blood cell count were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT and MRI and referral to an orthopedic surgeon and/or neurosurgeon, and/or an infectious disease physician.

149.    On April 3, 2013, Ronald Domino, was diagnosed with osteomyelitis of the spine, shoulder and hip and discitis.

150.    At all times relevant to this Complaint, Defendants, Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D., and the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

151.    At all times relevant to this Complaint, Defendants, Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D., Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

152.    At all times relevant to this Complaint, Defendants, Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D., Loyola University Health Systems, Loyola Hospital, and Loyola University Stritch School of Medicine, through its employees, agents and/or servants,

51

including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

153.    When the Plaintiff, Ronald Domino, was seen at Jesse Brown VA, by physicians Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D. from March 19, 2013 through April 2, 3013, each of these physicians were the actual and/or apparent agents of the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine. The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, physicians, and aforementioned physicians were negligent in one or more of the following ways:

        a.  Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

b. Improperly attributed his back and shoulder pain as musculoskeletal pain and/or gallstones;

c. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

d. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

e. The orderlies, clerks, and staff, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

f. Failed to refer Ronald Domino to an infectious disease physician for consultation;

g. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

h. Failed to diagnose osteomyelitis of the hip;

i. Failed to diagnose osteomyelitis of the spine;

j. Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

k. When the erythrocyte sedimentation rate was eventually ordered, the physicians improperly attributed the elevated ESR to polymyalgia rheumatica rather than an infection of the spine;

l. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

m. Failed to diagnose an epidural abscess in the Ronald Domino's spine;

n. Failed to diagnose discitis;

o. Improperly relied on simple x-rays of the spine, which would not reveal an epidural abscess or discitis.

154. From March 19, 2013 through April 2, 2013, Defendants, the United States of America, Northwestern University Feinberg School of Medicine, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern Memorial Hospital, an Illinois

Corporation, Northwestern Memorial Healthcare, an Illinois Corporation, and/or Loyola University Stritch School of Medicine, Loyola Hospital, an Illinois corporation, Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin, M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern and/or Loyola caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of serious injuries. Ronald Domino endured and will continue to endure permanently into the future, pain, suffering and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

155.    Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013. Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition. He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment. As a result, he did not know and could not have known that any medical negligence had been committed on him until December of 2013.

WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern

54

Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg

School of Medicine, and/or Loyola University Health Systems, an Illinois corporation,

Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine,

Shishmir Sharma, M.D., Daniel Feldman, M.D., Anna Kane, M.D., Kristin Schmidlin,

M.D., Ben Schwab, M.D., and Robert Hirschstick, M.D., individually and as a duly

authorized agents and/or apparent agents of the United States Government,

Northwestern and/or Loyola in the amount of $15,000,000.00.

**Count VII**
**The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois Corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Kristin Schmidlin, M.D., and Marisa McGinely, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern, and/or Loyola on April 2, 2013.**

156. On April 2, 2013, Kristin Schmidlin, M.D. transferred Ronald Domino back

to the Hines VA. On April 2, 2013, Ronald Domino came under the care again of Marisa

McGinley, M.D.

157. On April 2, 2013, the aforementioned doctors and staff at both the Hines VA

and the Jesse Brown VA, including nurses and orderlies, failed to recognize that Ronald

Domino's symptoms of back and shoulder pain and an elevated white blood cell count

were indicators of a spinal infection and/or symptoms that called for further testing, more

specifically a spinal CT and MRI and referral to an orthopedic surgeon and/or

neurosurgeon, and/or an infectious disease physician.

158.    On April 3, 2013 an MRI of his spine was conducted and he was diagnosed with osteomyelitis of the spine, discitis, and a septic hip. Thereafter, Ronald Domino had several spinal surgeries and surgeries on his hip to attempt to resolve the infectious process that had seeded in various orthopedic structures.

159.    At all times relevant to this Complaint, Defendants, Kristin Schmidlin, M.D., and Marisa McGinely, M.D., and the United States Government, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

160.    At all times relevant to this Complaint, Defendants, Kristin Schmidlin, M.D., and Marisa McGinely, M.D., Northwestern Memorial Healthcare, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Northwestern University Feinberg School of Medicine, through its physicians, nurses, orderlies, technicians, employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

161.    At all times relevant to this Complaint, Defendants, Kristin Schmidlin, M.D., and Marisa McGinely, M.D., Loyola University Health Systems, Loyola Hospital, and

Loyola University Stritch School of Medicine, through its employees, agents and/or servants, including their interns, resident physicians, and physicians, owed Plaintiff, Ronald Domino, a duty to exercise the degree of care, skill, knowledge, and diligence that other similar health care providers would exercise in the same or similar circumstances, and had a duty to comply with the standard of care in the community.

162.   When the Plaintiff, Ronald Domino, was seen at the Hines VA and Jesse Brown VA, by physicians Kristin Schmidlin, M.D., and Marisa McGinely, M.D., on April 2, 2013, each of these physicians were the actual and/or apparent agents of the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine.  The United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, through its agents, employees, and/or servants, including its interns, resident physicians, physicians, and aforementioned physicians were negligent in one or more of the following ways:

  a.   Failed to consider osteomyelitis and/or an infectious process when Mr. Domino had an elevated white blood cell count;

b. Improperly attributed his back and shoulder pain as musculoskeletal pain;

c. Improperly attributed his elevated white blood cell count to the prescription of prednisone/steroids;

d. Failed to order a CT scan and/or MRI scan of his spine despite repeated complaints of back pain;

e. The orderlies, clerks, and staff, failed to take a CT scan despite the physicians' orders to perform a CT scan of the spine;

f. Failed to refer Ronald Domino to an infectious disease physician for consultation;

g. Failed to refer Ronald Domino to a neurosurgeon and/or orthopedic surgeon for a consultation to determine the cause of the back and shoulder pain and elevated white blood cell count;

h. Failed to diagnose osteomyelitis of the hip;

i. Failed to diagnose osteomyelitis of the spine;

j. Improperly attributed the elevated ESR to polymyalgia rheumatica rather than an infection of the spine;

k. Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

l. Failed to diagnose an epidural abscess in the Ronald Domino's spine;

m. Failed to diagnose discitis.

163. On April 2, 2013, Defendants, the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine, Kristin Schmidlin, M.D., and Marisa McGinely, M.D.,

58

individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern and/or Loyola caused the Plaintiff, Ronald Domino to sustain injuries of a personal and pecuniary nature, including osteomyelitis of his spine, discitis, and a septic hip requiring multiple surgeries and resulting in a plethora of injuries. Ronald Domino endured and will continue to endure permanently into the future, pain and suffering, and disability. He will require future medical care for the remainder of his life for the injuries he sustained.

164.    Ronald Domino was diagnosed with osteomyelitis of the spine, discitis, and a septic hip on April 3, 2013. Thereafter, he had numerous surgeries performed on him and antibiotic therapy to treat this condition. He was treated for many months after April 3, 2013 for this condition. Despite the extensive treatment with numerous physicians, no physician or healthcare professional indicated to Ronald Domino that there was a misdiagnosis of his condition. He had no reason to think, suspect or know that a mistake and/or misdiagnosis had been made in his care and treatment. As a result, he did not know and could not have known that any medical negligence had been committed on him until December of 2013.

WHEREFORE, Plaintiff, Ronald Domino, demands judgment against Defendants the United States of America, Northwestern Memorial Healthcare, an Illinois corporation, Northwestern Memorial Hospital, an Illinois corporation, Northwestern Medical Faculty Foundation, an Illinois corporation, Northwestern University Feinberg School of Medicine, and/or Loyola University Health Systems, an Illinois corporation, Loyola Hospital, an Illinois corporation, Loyola University Stritch School of Medicine,

59

Kristin Schmidlin, M.D., and Marisa McGinely, M.D., individually and as a duly authorized agents and/or apparent agents of the United States Government, Northwestern and/or Loyola in the amount of $15,000,000.00.

Respectfully submitted,
LEVIN, RIBACK LAW GROUP, P.C.

By: _____ /s/ Richard I. Levin _____
Richard I. Levin, Esq.

LEVIN, RIBACK LAW GROUP, P.C.
60 W. Randolph St., Ste. 333
Chicago, Illinois 60601
(312) 782-6717
rlevin@levinriback.com

60

# EXHIBIT A:
# Notice of Intent to File Claim

## CLAIM FOR DAMAGE, INJURY, OR DEATH

**1. SUBMIT TO APPROPRIATE FEDERAL AGENCY**

U.S. Department of Veteran Affairs
Office of Regional Counsel (578/02)
Edward Hines VA Hospital
5000 S. 5th Ave.
P.O. Box 1427
Hines, Illinois 60141

**2. NAME, ADDRESS OF CLAIMANT AND CLAIMANT'S PERSONAL REPRESENTATIVE if
any. Number, Street, City, State and Zip code.**

Claimant:
Ronald Domino
333 Ashbury Pl.
Lemont, Illinois 60439

Representative:
Richard I. Levin
Levin, Riback Law Group, P.C.
60 W. Randolph St.
Suite 333
Chicago, Illinois 60601

**3. TYPE OF EMPLOYMENT**

Currently unemployed.
From 1962 to 1964 Military Police in Georgia and South Carolina.
Worked for International Harvester until from approximately 1964 to 1990.
Worked for Right Steel from approximately 1990 to 1996.
Worked for Dillon Transport from approximately 1996 to 2005.
Worked for Clear Channel from 2006 to 2008.

**4. DATE OF BIRTH**

11/10/1940

**5. MARTIAL STATUS**

Married

**6. DATE AND DAY OF ACCIDENT**

Between 3/4/13 to 4/3/13

**7. TIME (A.M. OR P.M.)**

Ongoing negligence by the doctors at the Hines VA and the Jesse Brown VA

8. **BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.**

This is a medical malpractice claim against the Edward Hines Jr. VA and the Jesse Brown VA Medical Center. Ronald Domino ("Domino") is a 73 year old army veteran. Domino suffered from minor visual obstruction due to his dermatochalasis, a prominent orbital pseudoherniation, and a ptotic right eyebrow. On February 22, 2013, Domino went to the Edward Hines Jr., VA Hospital ("Hines VA") located in Hines, Illinois to have a bilateral upper and lower blepharoplasty, right direct brow lift, and bilateral tarsal strip surgery. Before Domino's surgery a pre-operative complete blood count ("CBC") test was performed and the records came back indicating that he was capable of undergoing surgery. During the surgery, Domino's surgeons noticed more than usual bleeding and oozing. As a result of the increased swelling, an ophthalmologist was called in for a consultation. Domino's doctors concluded that the excessive bleeding was the result of significant periorbital ecchymosis and conjunctival swelling. On March 2, 2013 he was discharged from Hines VA.

Two days later, on March 4, 2013, Domino returned to the Hines VA complaining of left shoulder and back pain at a pain level of 9/10. Domino was examined by Laneshia Thomas, M.D. ("Dr. Thomas"), who noted that his white blood cell count was elevated. Although Dr. Thomas was aware of Domino's back pain and elevated white blood cell count, she did not properly evaluate or assess Domino and discharged him.

On the following two days, March 5, 2013 and March 6, 2013, Domino returned to the Hines VA complaining of back pain, but was discharged on both days without receiving a proper examination. On March 7, 2013, Domino returned to the Hines VA emergency room complaining of pain in his upper left abdomen. The doctors at the emergency room, in particular, Jason Castator, M.D. ("Dr. Castator") (same day ED physician) concluded Domino's

pain was due to constipation, conducted no further investigation, and negligently discharged him.

Again on March 9, 2013, Domino returned to Hines VA's emergency room with complaints of severe back pain when he walked and when supine. The doctors there took an X-ray of Domino's spine, although he did not state he had any trauma. The X-ray came back negative and Domino was improperly discharged again.

On March 18, 2013, Domino's wife and son brought him back to the Hines VA emergency room. Domino complained of severe pain all over his body and the inability to move. Domino told the doctors at the Hines VA that he was in so much pain it affected his sleep, appetite, and relationships. Additionally, his left ankle was swollen from a fall due to his pain and weakness from not eating. Blood tests were conducted and the tests indicated that his white blood cell count was elevated at 20.75. Doctors ordered a CT of Domino's abdomen and thoracic/lumbar spine; however, only a CT of his abdomen was conducted. The CT scan of Domino's abdomen showed that he had gallstones. Thereafter, a liver enzyme test was conducted. After these tests, Domino's doctors incorrectly concluded, based on all of his symptoms, that he was having gallbladder issues. Domino was also examined for his worsening back pain, new onset jaundice and weakness. Domino's doctors noted leukocytosis, but they incorrectly determined the cause to be the steroids he was receiving and negligently failed to investigate a possible infectious cause for his leukocytosis.

On March 19, 2013, Domino was transferred from Hines VA to Jesse Brown VA Medical Center (Jesse Brown VA). Once again the personnel treating Domino concluded that a CT of his spine should be conducted but never did one. Shishir Sharma, M.D. ("Dr. Sharma") evaluated Domino but failed to do a thorough assessment, and failed to consider epidural and para spinal infection as a differential diagnosis. Dr. Sharma evaluated Domino again on March 20, 2013, but only prescribed pain medications and did not investigate further. On March 22, 2013, Kristin

Schmidlin, M.D. ("Dr. Schmidlin") examined Domino and also but failed to evaluate Domino for his back pain or investigate further.

On March 26, 2013, Dr. Sharma, once again, saw Domino and called in a radiologist. The radiologist at Jesse Brown VA failed to properly read the imaging films and reported no signs of spinal lesions when, in fact, subsequent tests showed that Domino had a paraspinal abscess. On March 29, 2013, Domino still had an elevated white blood cell count, even though he was no longer on the prednisone. Eventually, one of Domino's doctors checked his erythrocyte sedimentation rate ("ESR") and noticed it was markedly elevated. Domino was then incorrectly diagnosed with polymyalgeal rhematica.

On April 2, 2013, Dr. Schmidlin transferred Domino back to the Hines VA. On April 3, 2013 an MRI of his spine was conducted and he was diagnosed with osteomyelitis of the spine, discitis, and a septic hip. From March 3, 2013 until April 3, 2013 the doctors and staff at both the Hines VA and the Jesse Brown VA failed to recognize that Domino's symptoms were indicators of a spinal infection and/or symptoms that called for further testing, more specifically a spinal CT or MRI. As a result of his doctors' negligence, Domino suffered from osteomyelitis of his spine, discitis, and a septic hip requiring surgery and resulting in a series of injuries, such as

9. **NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).**

None.

**BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED.**

None.

10. **STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.**

Oseteomyelitis of his spine;
Stenosis in his spine;
Discitis;
Septic Hip;
Neurological deficits in his extremities;
Pancreatitis;
Gallblader ailments requiring surgery.

11. **WITNESSES (Name, Addresses (number, street, city, state, and zip code)**

Charlene Domino
333 Ashbury Pl.
Lemont, IL 60439

Rob Domino
333 Ashbury Pl.
Lemont, IL 60539

The aforementioned physicians and unknown nurses and personnel at the Hines and Jesse Brown VA.

12. **AMOUNT OF CLAIM (in dollars)**
    a. **Property Damage**

    None

    b. **Personal Injury**

    $15,000,000.00

    c. **Wrongful Death**

    None

    d. **Total (Failure to specify may cause forfeiture of your rights).**

    $15,000,000.00

Ronald Domino
5

I certify that the amount of the claim covers only damages and injuries cause by the incident above and agree to accept said amount in full satisfaction and final settlement of this claim.

13.
   a. SIGNATURE OF CLAIMANT

*Ronald Domino*

   b. PHONE NUMBER OF PERSON SIGNING FORM

   (630) 955-9561

14. DATE OF SIGNATURE

   8 - 12 - 14

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?

   No.

   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.

   None.

16. Have you ever filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?

   None.

17. If deductible, state amount.

   None.

18. If claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

   None.

19. Do you carry public liability and property damage insurance?

None.

**If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).**

None.

INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of**

Ronald Domino

8

**your rights.**

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached. A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims. C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information. D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

Ronald Domino

9

# EXHIBIT B:
# Receipt of Letter



**DEPARTMENT OF VETERANS AFFAIRS**
**CHICAGO OFFICE OF REGIONAL COUNSEL–REGION 10**
5000 S 5th Ave
PO Box 1427
Hines, IL 60141
Telephone: 708-202-2216
Facsimile: 708-202-2239



<u>Area Offices</u>

3001 Green Bay Rd
Bldg 135-Room 215B
North Chicago, IL 60064
224-610-3855

820 South Damen
Room 2421
Chicago, IL 60612
312-569-7751

2122 W Taylor St
Room 307
Chicago, IL 60612
312-980-4207

1900 E Main St
Danville, IL 61832
217-554-4871

September 4, 2014    Via USPS Certified Mail: 7013 2630 0002 1548 7964

Richard Levin
Levin, Riback Law Group
60 W Randolph St – Ste 333
Chicago IL 60601

In Reply Refer To: GC Laws #8027

SUBJ: Tort Claims - Medical Malpractice, Ronald Domino
       Date of Incident 4/13/2014

Dear Mr. Levin:

This will acknowledge the receipt of a SF-95 in the amount of $15,000,000 dated August 12, 2014 and received by Regional Counsel on September 4, 2014. By Federal law, this office now has six (6) months to consider the claim before you may file a suit in United States District Court.

<u>Notice to Individuals Presenting a Claim on Behalf of Another Individual</u>: It is essential that your authority, under relevant state law, to bring this claim on behalf of another individual and/or a decedent is established. If you have not already done so, please provide the documents that establish your authority to act as an agent (on behalf of a living individual), or as an executor or administrator of a decedent's estate. If you do not do so, your claim may be rejected or denied solely on that basis.

This office is authorized by federal regulations (28 CFR§14.4) to request from the claimant certain information to assist us in our investigation of the claim. In order to conduct a thorough investigation, please provide the following information:

(1) Name and location of *all* VA facilities your client received services and/or treatment in the last 10 years.

(2) All VA locations and approximate dates for which your client received treatment specifically for this incident.

(3) Any and all medical records from **non**-VA facilities or providers for treatment your client received relevant to your client's claim.

Page 2
Mr. Levin

    (4)  If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

    (5)  Itemized bills for medical and hospital expenses incurred, or itemized receipts of payment for such expenses.

    (6)  If a claim is made for loss of income and your client is self-employed, documentary evidence showing the amount of earnings actually lost.

    (7)  Copies of your client's federal income tax returns for the past five (5) years.

    (8)  Any other evidence or information which may have a bearing on the responsibility of the United States for this claim.

In addition to the above, your client may be required to submit to a physical or mental examination by a physician employed by the VA.

Our request for this information is in no way an admission of liability on the part of the United States. Please provide these documents at your earliest convenience, as their presence will substantially expedite the investigation into the merits of the claim. Shelia Fitzpatrick, a Regional Counsel Staff Attorney, may contact you and request submission of additional information.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

D. Brent Pope
Regional Counsel

# EXHIBIT C:
# Denial of Negligence



**DEPARTMENT OF VETERANS AFFAIRS**
**CHICAGO OFFICE OF REGIONAL COUNSEL–REGION 10**
5000 South 5th Avenue
P. O. Box 1427
Hines, Illinois 60141
Telephone: 708-202-2216
Facsimile: 708-202-2239

<u>Area Offices</u>
3001 Green Bay Rd
Bldg 135-Room 215B
North Chicago, IL 60064
224-610-3855

820 South Damen
Room 2421
Chicago, IL 60612
312-569-7751

2122 W Taylor St
Room 307
Chicago, IL 60612
312-980-4207

1900 E Main St
Danville, IL 61832
217-554-4871

March 3, 2015

Ronald Domino
c/o Richard I. Levin, Attorney
Levin, Riback Law Group, P. C.
60 West Randolph Street, Suite 333
Chicago, Illinois 60601

Certified Mail # 7014 1200 000 2167 1279
In Reply Refer To: Administrative claim of Donald Domino
GCLAWS Case No. 8027

Dear Mr. Levin:

This office has completed investigation of the above-referenced matter under the Federal Tort Claims Act (FTCA), and it is denied.

The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable. Our review did not find any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that resulted in harm regarding your allegation that you suffered personal injury as a result of medical treatment provided.

If you are dissatisfied with this decision, you may file a request for reconsideration of your claim with the VA General Counsel by any of the following means: (1) by mail to the Department of Veterans Affairs, General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) by data facsimile (fax) to (202) 273-6385; or (3) by electronic mail (e-mail) to OGC.torts@mail.va.gov. To be timely, VA must receive this request within six months of the mailing of this final denial. Upon filing such a request for reconsideration, VA shall have 6 months from the date of that filing in which to make final disposition of the claim, and your option to file suit in an appropriate U.S. District Court under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of such request for reconsideration (28 C.F.R. Section 14.9).

In the alternative, if you are dissatisfied with the action taken on your claim, you may file suit in accordance with the Federal Tort Claims Act, sections 1346(b) and 2671-2680, title 28, United States Code, which provides that a tort claim that is administratively

denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated within six (6) months after the date of the mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If such a suit is initiated, please be advised that the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

D. BRENT POPE
Regional Counsel

# EXHIBIT D:
# Report of Physician

## IN THE FEDERAL COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD DOMINO,           ) | |
|                  ) | |
|           Plaintiff,       ) | |
|                  ) | |
|             vs.          ) | No. |
|                  ) | |
| THE UNITED STATES GOVERNMENT | |
| NORTHWESTERN UNIVERSITY, a corporation  ) | |
| d/b/a Fienberg School of Medicine, a not-for-profit  ) | |
| corporation, and                ) | |
| LOYOLA UNIVERSITY, a corporation d/b/a   ) | |
| Stritch School of Medicine        ) | |
|                  ) | |
|          Defendants.      ) | |

## REPORT OF PHYSICIAN

1. I am a physician licensed to practice medicine and I have been practicing medicine for 15 years.

2. I am board certified in Emergency Medicine and I am trained in emergency room treatment and well versed in the matters of emergency room medicine that relate to this matter. I am knowledgeable in the issues of medicine that were practiced in this matter. I teach medicine at Yale University School of Medicine and work as an Emergency Medicine physician at the university hospital. I am familiar with the standard of care for physicians treating patients who are taking steroids and have a concurrent infectious process that are treated in the emergency room.

3. I have reviewed medical records and surgical notes of from the following providers: Jesse Brown VA Medical Center and Edward Hines, Jr. VA Hospital. Based upon my review of the records and reports, I believe there is a reasonable and meritorious cause for filing this action.

4. Ronald Domino had a surgical procedure performed on his eyelids on February 22, 2013. During the procedure there was an inordinate amount of bleeding. It was determined that Mr. Domino had a low platelet count of approximately 3,000 and was most likely suffering from idiopathic thrombocytopenic purpura (ITP). One of the treatments for ITP is the administration of steroids. Mr. Domino was started on prednisone. One of the side effects of prednisone is an elevated white blood cell count (WBC); typically, this elevation of WBC's is mild to moderate and is not associated with elevated neutrophils or bands (which is often seen in bacterial infections).

5. One of the side effects of prednisone is that it lowers the body's immune system and masks infection. If a white blood cell count continues to increase on the same, constant dosage, especially if the type of WBC's that are elevated are neutrophils or bands, it is a sign that the patient may have an infection and the standard of care requires the physician caring for the patient to consider an infectious process. If a patient has an increasing white blood cell count and is complaining of severe back pain, the standard of care requires the physician caring for the patient to consider osteomyelitis of the spine, discitis, or spinal abscess in the differential diagnosis and to order an MRI scan of the spine. A physician may choose to order an ESR (Erythrocyte Sedimentation Rate) or a CRP (C-Reactive protein), which are blood tests that are almost always significantly elevated in the presence of these infections; a positive test should prompt MRI investigation of the spine in someone with back or neck pain and suspicion for infection. If an infection (osteomyelitis of the spine, discitis, or spinal abscess) is present, the standard of care requires

intravenous antibiotics, and immediate consultation to a neurosurgeon. The standard of care treating patients who have an on-going infectious process and are concurrently taking steroids is the same for all physicians.

6. On March 4, 2013, Ronald Domino had been on prednisone for his ITP and his white blood cell count was significantly elevated to 17,000. He was seen by a team of physicians over the next month at the Hines and Jess Brown VA hospitals. During the time period that he remained on prednisone, his white blood cell count continued to elevate while he made continuous complaints of severe and incapacitating back, shoulder and hip pain.

7. Ronald Domino was seen by the following physicians: Jason Castator, M.D., Srinivas Yallapragada, M.D., Diane Aw, M.D., and nurses, orderlies, technicians at the Hines VA and the Jesse Brown VA. These physicians, orderlies, nurses and technicians deviated from the appropriate standard of care in the following ways:

   a) On March 7, 2013, the doctors at the emergency room, including, Dr. Jason Castator, M.D. improperly concluded Domino's pain was due to constipation, failed to investigate further, and improperly discharged him;

   b) On March 9, 2013, the emergency room doctors, including Shrinvas Yallapragada, M.D., failed to other further imaging tests to examine Domino's back and only limited his investigation to x-ray films, even though Domino did not state he had any trauma;

   c) On March 18, 2013, the emergency room physicians, including Diane Aw, M.D., incorrectly and improperly diagnosed Domino with gallbladder issues;

   d) On March 18, 2013, the emergency room physicians, including Diane Aw, M.D., incorrectly and improperly determined that the steroids he was receiving were the reasons for his worsening back pain, new onset jaundice, weakness and leukocytosis, and failed to investigate further.

8. As a result of these deviations from the standard of care, the infectious process he was suffering from-osteomyelitis of his spine, spinal abscess, discitis, and a septic hip went undiagnosed and untreated. As a result of the failure to diagnose and treat the infection of his spine and hip, the infection spread and required him to undergo numerous surgeries and suffer paralysis of his lower extremities and other injuries. If the above mentioned physicians would have further investigated Ronald Domino's back pain, then his infection would have been detected and earlier treatment would likely have prevented Ronald Domino's permanent and life-altering injuries. My opinions are preliminary, which may be expounded upon, supplemented, and/or amended, including after written discovery and/or deposition testimony.

# EXHIBIT E:
# Report of Physician

## IN THE FEDERAL COURT FOR THE NORTHERN
## DISTRICT OF ILLINOIS

RONALD DOMINO,               )
                                       )
            Plaintiff,        )
                                       )
          vs.                )     No.
                                       )
THE UNITED STATES GOVERNMENT  )
NORTHWESTERN UNIVERSITY, a corporation  )
d/b/a Fienberg School of Medicine, a not-for-profit  )
corporation, and  )
LOYOLA UNIVERSITY, a corporation d/b/a  )
Stritch School of Medicine  )
                                       )
            Defendants.   )

## <u>REPORT OF PHYSICIAN</u>

1. I am a physician licensed to practice medicine and I have been practicing medicine for 39 years.

2. I am board certified in Internal Medicine and Pulmonary Medicine and well versed in the matters of Internal Medicine that relate to this matter. I am knowledgeable in the issues of medicine that were practiced in this matter. I teach medicine at an accredited medical school in the state of Florida. I am an assistant clinical professor of Internal Medicine, Pulmonary Medicine and Hospitalist Medicine. I am familiar with the standard of care for physicians treating patients who are taking steroids and have a concurrent infectious process. The standard of care for treating patients with idiopathic thrombocytopenic purpura (ITP) that are on steroids is the same for all fields of medicine.

3. I have reviewed medical records and surgical notes of from the following providers: Jesse Brown VA Medical Center and Edward Hines, Jr. VA Hospital. Based upon my

review of the records and reports, I believe there is a reasonable and meritorious cause for filing this action.

4. Ronald Domino had a surgical procedure performed on his eyelids on February 22, 2013. During the procedure there was an inordinate amount of bleeding. It was determined that Mr. Domino had a low platelet count of approximately 3,000 and was most likely suffering from idiopathic thrombocytopenic purpura (ITP). One of the treatments for ITP is the administration of steroids. Mr. Domino was started on prednisone. Once the white blood cell count becomes elevated, it will remain stable assuming the dosage of prednisone remains the same. Mr. Domino's dosage of prednisone remained the same.

5. One of the side effects of prednisone is that it lowers the body's immune system and masks infection. If a white blood cell count continues to increase on the same, constant dosage, it is a sign that the patient may have an infection and the standard of care requires the physician caring for the patient to consider an infectious process. If a patient has an increasing white blood cell count and is complaining of severe back pain, the standard of care requires the physician caring for the patient to consider osteomyelitis of the spine, discitis, or spinal abscess in the differential diagnosis and to order a CT scan and/or MRI scan of the spine. If an infection is present, the standard of care requires intravenous antibiotics, referral to a neurosurgeon and referral to an infectious disease specialist.

6. On March 4, 2013, Ronald Domino had been on prednisone for his ITP and his white blood cell count was significantly elevated to 17,000. He was seen by a team of

physicians over the next month at the Hines and Jess Brown VA hospitals. During the time period that he remained on prednisone, his white blood cell count continued to elevate while he made continuous complaints of severe and incapacitating back, shoulder and hip pain.

7. Ronald Domino was seen by the following physicians: David Smith, M.D., Laneshia Thomas, M.D., Jeffrey Hootaling, M.D., Jacqueline Blank, M.D., Julia Malalis, M.D., Arti Lakhani, M.D., James, Martin, M.D., Shishir Sharma, M.D., Dan Feldman, M.D., Ben Schwab M.D., Kristin Schmidlin, M.D., Robert Hirschstick, M.D., Monica Patadia M.D,Michael Loochtan, M.D.Marisa McGinley, D.O., Anna Kane, M.D. and nurses, orderlies, technicians at the Hines VA and the Jesse Brown VA. These physicians, orderlies, nurses and technicians deviated from the appropriate standard of care in the following ways:

     a) Improperly attributed the increasing elevated white blood cell count to the side effect of prednisone and failed to consider an infection as being the reason for the increasing white blood cell count;

     b) Improperly attributed Ronald Domino's continuous complaints of back and shoulder pain as being benign musculoskeletal discomfort rather than a sign of an infection in his spine;

     c) Failed to order an MRI of Ronald Domino's spine;

     d) Failed to order a CT scan of Ronald Domino's spine;

     e) Failed to insure that the two CT scans that were ordered were, in fact, taken;

     f) Failed to refer Ronald Domino to a neurosurgeon or orthopedic surgeon for evaluation of an infectious process in his spine.

     g) Failed to refer Ronald Domino to an infectious disease specialist;

h) Improperly diagnosed and attributed Ronald Domino's back pain in the presence of an elevating white blood cell count to innocent gallstones;

i) Improperly diagnosed and attributed his back pain in the presence of an elevating white blood cell count as constipation;

j) Failed to promptly order a erythrocyte sedimentation rate (ESR) when the patient had an elevating white blood cell count;

k) When the erythrocyte sedimentation rate was eventually ordered, the physicians improperly attributed the elevated ESR to polymyalgia rheumatica rather than an infection of the spine;

l) Failed to prescribe the appropriate antibiotic therapy when Ronald Domino clearly had an infectious process;

m) Failed to diagnose an epidural abscess in the Ronald Domino's spine;

n) Failed to diagnose discitis;

o) Failed to diagnose osteomyelitis of his spine;

p) Failed to diagnose osteomyelitis in his hip;

q) Improperly relied on simple x-rays of the spine which would not show an epidural abscess or discitis.

8. As a result of these deviations from the standard of care, the infectious process he was suffering from-osteomyelitis of his spine, spinal abscess, discitis, and a septic hip went undiagnosed and untreated. As a result of the failure to diagnose and treat the infection of his spine and hip, the infection spread and required him to undergo numerous surgeries and suffer paralysis of his lower extremities and other injuries. If the above mentioned physicians would have further investigated Ronald Domino's back pain, then his infection would have been detected and earlier treatment would likely have prevented Ronald Domino's permanent and life-altering injuries.My opinions are

preliminary, which may be expounded upon, supplemented, and/or amended, including after written discovery and/or deposition testimony.

June 9, 2015

# EXHIBIT F:
# Attorney Affidavit

## AFFIDAVIT OF RONALD DOMINO'S ATTORNEY
## (735 ILCS 5/2-622)

Richard I. Levin, an attorney, being first duly sworn on oath, deposes and states as follows:

1.  I consulted with two medical Physicians.

2.  One Physician practices Emergency Room medicine and is knowledgeable in the relevant issues involved in this case. The other Physician practices internal medicine and is a hospitalist and is knowledgeable in the relevant issues involved in this case.

3.  The Physicians are qualified by experience and have each provided a report stating that there is a reasonable and meritorious cause for the filing of this case.

4.  I have concluded on the basis of the Physicians' consultation and review of the medical records of Ronald Domino that there is a reasonable and meritorious cause for the filing of this case.

FURTHER AFFIANT SAYETH NOT.

_____/s/ Richard I. Levin_____
Richard I. Levin, Esq.